THE STATE OF OHIO, APPELLANT, *v.* THOMAS, APPELLEE.

[Cite as State *v.* Thomas (1988), 40 Ohio St. 3d 213.]

(No. 87-1514—Submitted September 20, 1988—Decided December 30, 1988.)

214

*Gregory A. White,* prosecuting attorney, and *Jonathan E. Rosenbaum,* for appellant.

*Thomas J. Dougan* and *Joseph Grunda,* for appellee.

HOLMES, J. This case presents, for the first time in this court, the issue of whether "involuntary manslaughter," as defined in R.C. 2903.04, is a lesser included offense of aggravated murder with prior calculation and design, R.C. 2903.01(A). Applying the analysis set forth in *State* v. *Kidder* (1987), 32 Ohio St. 3d 279, 513 N.E. 2d 311, as modified in *State* v. *Deem* (1988), 40 Ohio St. 3d 205, 533 N.E. 2d 286, we answer such query in the affirmative. However, an instruction on such lesser included offense was not supported by the evidence adduced at trial below and was thus properly refused by the trial court. In addition, we hold that the jury is not required by Crim. R. 31(C) and R.C. 2945.74 to unanimously agree that the defendant is not guilty of the greater offense before addressing a lesser included offense.

I

R.C. 2903.01 defines "aggravated murder" as follows:

"(A) No person shall purposely,

and with prior calculation and design, cause the death of another.

"(B) No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape."

R.C. 2903.04 defines "involuntary manslaughter" as follows:

"(A) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony.

"(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor."

The test for whether an offense is a lesser included offense of another, R.C. 2945.74 and Crim. R. 31(C), is stated in *State* v. *Deem, supra,* at paragraph three of the syllabus:

"An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense."

The first prong of this test is a threshold comparison of the statutory provisions to determine if one offense carries a greater penalty than the other. See R.C. 2929.11 and 2929.21. The second prong of this test involves a determination of whether one offense, as statutorily defined, is always

and necessarily included within the second offense. The third prong of this test requires a review of the elements of each offense and a determination that some element of the greater offense is not required to prove the lesser offense. At this point in the determination of the appropriateness of giving a charge on a lesser included offense, a review of the evidence involved in the particular case would be premature.

Accordingly, this court has held that involuntary manslaughter is a lesser included offense of aggravated murder under subsection (B) of R.C. 2903.01 — the purposeful killing of another while committing or attempting to commit the felonies listed therein, such as kidnapping, rape, arson, etc. *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264; *State* v. *Scott* (1980), 61 Ohio St. 2d 155, 15 O.O. 3d 182, 400 N.E. 2d 375; *State* v. *Cooper* (1977), 52 Ohio St. 2d 163, 6 O.O. 3d 377, 370 N.E. 2d 725.[1] In addition, this court has held that involuntary manslaughter is a lesser included offense of murder, R.C. 2903.02, which, of course, is itself a lesser included offense of both R.C. 2903.01(A) and (B). *State* v. *Rohdes* (1986), 23 Ohio St. 3d 225, 23 OBR 382, 492 N.E. 2d 430. Further, in *State* v. *Johnson* (1983), 6 Ohio St. 3d 420, 6 OBR 466, 453 N.E. 2d 595, reversed and remanded on other grounds (1984), 467 U.S. 493, this court observed, in determining that involuntary manslaughter was a lesser included offense of murder within the consideration of the Double Jeopardy Clause, see *Blockburger* v. *United States* (1932), 284 U.S. 299, 304, and *Brown* v. *Ohio* (1977), 432 U.S. 161,

---

[1] However, in *Jenkins* and *Cooper,* this court also held that an instruction on involuntary manslaughter was not warranted by the evidence presented in those cases, and was properly refused.

164-166, that "the common element shared by these two offenses is the causing of the death of another with the *only* distinguishing factor being the mental state involved in the act. * * * It is manifestly obvious that these two [mental] states are mutually exclusive and that in any given killing the offender may be possessed of only one." (Emphasis added.) *Johnson, supra,* 6 Ohio St. 3d at 424, 6 OBR at 469, 453 N.E. 2d at 599; see *Johnson, supra,* 467 U.S. at 497, fn. 6. Murder and involuntary manslaughter are statutorily defined in such a way that the elements of involuntary manslaughter, aside from the mental state, are always met whenever a murder has been committed.

However, even though the aforestated prongs of the lesser included test are met, we have stated that a charge on the lesser offense is warranted only if the evidence adduced at trial would support it. *Kidder, supra,* at 281, 513 N.E. 2d at 314; *State* v. *Davis* (1983), 6 Ohio St. 3d 91, 6 OBR 131, 451 N.E. 2d 772; *State* v. *Wilkins* (1980), 64 Ohio St. 2d 382, 18 O.O. 3d 528, 415 N.E. 2d 303. As to this consideration, we stated in *Kidder, supra,* that: "Even though so defined, a charge on the lesser included offense is not required, unless the trier of fact could reasonably reject an affirmative defense and could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense." *Id.* at 282-283, 513 N.E. 2d at 315-316.

The meaning of this language is that even though an offense may be statutorily defined as a lesser included offense of another, a charge on the lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. Resultingly, an instruction on the lesser included offense of involuntary manslaughter will be given in a murder trial only when, on the evidence presented, the jury could reasonably find against the state on the element of purposefulness and still find for the state on the defendant's act of killing another.

The same analysis is true of aggravated murder with prior calculation and design, which is defined as murder with an enhanced mental state. Thus, the only distinguishing factor between R.C. 2903.01(A) and involuntary manslaughter is, as in the case of murder, the mental state involved. Applying the first prong of the *Deem* syllabus, we determine that "(i) the offense [of involuntary manslaughter] carries a lesser penalty than the other [aggravated murder with prior calculation and design]; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed [as one cannot criminally cause another's death without committing an underlying felony or misdemeanor]; and (iii) some element of the greater offense [either purposefulness or prior calculation and design] is not required to prove the commission of the lesser offense." Involuntary manslaughter, R.C. 2903.04, is a lesser included offense of aggravated murder, R.C. 2903.01(A).

This test is not a word game to be performed by rote by matching the words chosen by the legislature to define criminal offenses. Some offenses, such as aggravated murder and murder, lend themselves to such a simple matching test; others do not. See, *e.g., State* v. *Johnson* (1988), 36 Ohio

St. 3d 224, 522 N.E. 2d 1082 (constru-
ing gross sexual imposition, R.C.
2907.05[A][3], to be a lesser included
offense of rape, R.C. 2907.02[A][1][b]).
We would also note that the elements
of the offenses are "matched" only in
part (iii) of the test to determine if
"some element" of the greater offense
is not found in the lesser offense. The
proper overall focus is on the nature
and circumstances of the offenses as
defined, rather than on the precise
words used to define them.

Having determined that Thomas'
requested instruction meets the basic
lesser included offense test, we now
turn to the issue of whether the
evidence presented at trial would
reasonably support an acquittal on the
offense charged (aggravated murder),
and would reasonably support a con-
viction upon the lesser included offense
sought here (involuntary manslaugh-
ter). Upon a thorough review of the
record in this case, we hold, for the
reasons stated below, that under no
reasonable view of the evidence, even
in a light most favorable to the ac-
cused, could the jury have found that
Thomas did not purposely intend to
cause the death of Newhouse. Thus,
the trial court did not err in refusing to
instruct the jury on the lesser included
offense of involuntary manslaughter.

An essential element of the offense
of aggravated murder with prior
calculation and design (as well as of
murder), and the distinguishing ele-
ment of those crimes and involuntary
manslaughter, is the element of pur-
posefulness. This element is defined in
R.C. 2901.22(A) as follows: "A person
acts purposely when it is his specific in-
tention to cause a certain result * * *."

Here, it is undisputed that Thomas
forced Newhouse at gunpoint to ac-
company him in Newhouse's automo-
bile to a lake, ostensibly because
Thomas intended to kill Newhouse and
dispose of the body. Thomas' confes-
sions to his in-laws made it clear that
Newhouse was aware of Thomas' in-
tentions and that Newhouse attempted
to escape. Thomas' sole basis for the
lesser included offense instruction was
that he did not intend to shoot
Newhouse during the struggle for the
gun. We find such view of the
evidence, under these circumstances,
to be unreasonable as a matter of law.

Thomas abducted[2] Newhouse with
a loaded firearm.[3] It is axiomatic that
"a person is presumed to intend the
natural, reasonable and probable con-
sequences of his voluntary acts." *State
v. Johnson* (1978), 56 Ohio St. 2d 35,
39, 10 O.O. 3d 78, 80, 381 N.E. 2d 637,
640. This court has held on numerous
occasions that "where an inherently
dangerous instrumentality was
employed, a homicide occurring during
the commission of a felony is a natural
and probable consequence presumed to
have been intended. Such evidence is
sufficient to allow a jury to find a pur-
poseful intent to kill. * * *" *State* v.
*Jester* (1987), 32 Ohio St. 3d 147, 152,
512 N.E. 2d 962, 968. See, also, *e.g.,*

---

[2] In R.C. 2905.02, "abduction" is de-
fined as follows:

"(A) No person, without privilege to
do so, shall knowingly do any of the follow-
ing:

"(1) By force or threat, remove
another from the place where he is found;

"(2) By force or threat, restrain
another of his liberty, under circumstances
which create a risk of physical harm to the
victim, or place him in fear[.] * * *"

[3] The weapon was never recovered.
Thomas' uncle-in-law and his grandmother-
in-law both testified Thomas told them he
threw the gun in a pond after the shooting
occurred.

*State* v. *Esparza* (1988), 39 Ohio St. 3d 8, 529 N.E. 2d 192. The fact that Thomas' gun went off sooner than was evidently intended does not mean that the resulting homicide was unintended. An instruction on involuntary manslaughter was not warranted by the facts herein.

## II

The second major issue presented in this appeal is whether a jury must be instructed that it cannot consider any lesser included offenses on which it has been properly charged unless and until it unanimously agrees that the defendant is not guilty of the indicted greater offense. The court of appeals held that R.C. 2945.74[4] and Crim. R. 31(C)[5] require the jury to unanimously agree that the defendant is not guilty of the greater offense before addressing *any* lesser included offenses. This appellate decision is in direct conflict with the decision of the Eighth Appellate District in *State* v. *Muscatello* (1977), 57 Ohio App. 2d 231, 11 O.O. 3d 320, 387 N.E. 2d 627, affirmed on other grounds (1978), 55 Ohio St. 2d 201, 9 O.O. 3d 148, 378 N.E. 2d 738. In *Muscatello,* the court held, at paragraph three of the syllabus, that "* * * [t]he jury is not required to determine unanimously that the defendant is not guilty of the crime charged before they may consider a lesser included offense." We turn, then, to a resolution of this conflict. An excellent analysis of the advantages and disadvantages of each type of instruction is found in *United States* v. *Tsanas* (C.A. 2, 1978), 572 F. 2d 340, certiorari denied (1978), 435 U.S. 995, and is quoted here with approval:

"The instruction given here [requiring unanimity] has the merit, from the Government's standpoint, of tending to avoid the danger that the jury will not adequately discharge its duties with respect to the greater offense, and instead will move too quickly to the lesser one. From the defendant's standpoint, it may prevent any conviction at all; a jury unable either to convict or acquit on the greater charge will not be able to reach a lesser charge on which it might have been able to agree. But it entails disadvantages to both sides as well: By insisting on unanimity with respect to acquittal on the greater charge before the jury can move to the lesser, it may prevent the Government from obtaining a conviction on the lesser charge that would otherwise have been forthcoming and thus require the expense of a retrial. It also presents dangers to the defendant. If the jury is heavily for conviction on the greater offense, dissenters favoring the lesser may throw in the sponge rather than cause a mistrial that would leave the defendant with no conviction at all, although the jury might have reached sincere and unanimous agreement with respect to the lesser charge.

---

[4] R.C. 2945.74 provides, in part:

"The jury may find the defendant not guilty of the offense charged, but guilty of an attempt to commit it if such attempt is an offense at law. When the indictment or information charges an offense, including different degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser included offense."

[5] Crim. R. 31(C) provides, in part:

"* * *When the indictment, information, or complaint charges an offense including degrees, or if lesser offenses are included within the offense charged, the defendant may be found not guilty of the degree charged but guilty of an inferior degree thereof, or of a lesser included offense."

"An instruction permitting the jury to move on to the lesser offense if after all reasonable efforts it is unable to reach a verdict on the greater likewise has advantages and disadvantages to both sides — the mirror images of those associated with the charge actually given here. It facilitates the Government's chances of getting a conviction for something, although at the risk of not getting the one that it prefers. And it relieves the defendant of being convicted on the greater charge just because the jury wishes to avoid a mistrial, but at the risk of a conviction on the lesser charge which might not have occurred if the jury, by being unable to agree to acquit on the greater, had never been able to reach the lesser." *Id.* at 346.

We do not, however, concur in the resolution of this issue reached by the federal circuit court of appeals which is to permit the trial court to give whichever instruction it prefers, or whichever instruction is requested by the defendant. See, also, *United States* v. *Jackson* (C.A. 9, 1984), 726 F. 2d 1466 (following *Tsanas*). We reject the "acquittal first" instruction approved by the court of appeals below because such an instruction encroaches on the province of the jury to decide questions of fact and to arrive at a verdict based on all the evidence before it and all the various offenses on which it has been properly instructed.[6]

The defendant's right[7] to have the jury instructed on a lesser included offense is fundamental to providing defendant with a fair trial. "Two of the acknowledged, yet commonly conflicting goals of the criminal law are the protection of society and the imposition of fair penalties. If a criminal avoids all responsibility for a crime due to a 'technicality,' the safety of the community has been compromised; if a defendant suffers a harsher judgment than is warranted, justice has not been done." Ettinger, In Search of a Reasoned Approach to the Lesser Included Offense (1984), 50 Brooklyn L. Rev. 191, 194. The jury is the sole and final arbiter of the facts in a criminal case. Under proper instructions, the jury must be able to consider all the criminal implications that reasonably arise from the proof, and should not "be encouraged to engage in conjecture for the purpose of offering clemency to the accused." *Id.* at 222-223; see, also *State* v. *Loudermill* (1965), 2 Ohio St. 2d 79, 80-81, 31 O.O. 2d 60, 61, 206 N.E. 2d 198, 199-200; *Keeble* v. *United States* (1973), 412 U.S. 205, 208. Although the risk of coerced decisions may be present in any jury deliberation, we agree with the Oregon Supreme Court that the "acquittal

---

[6] We are not persuaded that the language of R.C. 2945.74 and Crim. R. 31(C) requires a unanimous verdict of not guilty on the charged offense prior to consideration of other offenses instructed on by the court. These provisions give the trial court the authority to present certain lesser offenses to the jury. They do not specify the procedure which juries must follow in making their deliberations. Accord *State* v. *Ogden* (1978), 35 Ore. App. 91, 96, 580 P. 2d 1049, 1052.

[7] The United States Supreme Court has expressly declined to hold whether or not a defendant is entitled to a lesser included offense instruction as a matter of constitutional due process, *Keeble* v. *United States* (1973), 412 U.S. 205, 213; *Beck* v. *Alabama* (1979), 447 U.S. 625, 637, but has noted that "the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard," *id.* We would observe that the defendant's entitlement to such a charge is based, at a minimum, on the provisions of R.C. 2945.74 and Crim. R. 31(C).

first" instruction exacerbates such risk. "When the jury is instructed in accordance with the 'acquittal first' instruction, a juror voting in the minority probably is limited to three options upon deadlock: (1) try to persuade the majority to change its opinion; (2) change his or her vote; or (3) hold out and create a hung jury." *State* v. *Allen* (1986), 301 Ore. 35, 39, 717 P. 2d 1178, 1180. Because of its potential for a coerced verdict, the "acquittal first" instruction is improper and may not be charged to a jury in this state. Accord *Tarwater* v. *Cupp* (1988), 304 Ore. 639, 748 P. 2d 125.

"A court may tell a jury it is to first consider the charge in the accusatory instrument and if it cannot agree on a verdict on that charge it should then consider the lesser included offenses submitted in the instructions. * * * An instruction to the effect the jury must consider the principal charge first does not prevent consideration of all submitted offenses or set an agenda for the jury deliberations and does not invade the province of the jury." *State* v. *Ogden* (1978), 35 Ore. App. 91, 98, 580 P. 2d 1049, 1053; followed in *State* v. *Allen, supra.* This was the holding of the Eighth Appellate District in *Muscatello,* which we adopt today:

"A jury must unanimously agree that the defendant is guilty of a particular criminal offense before returning a verdict of guilty on that offense. If a jury is unable to agree unanimously that a defendant is guilty of a particular offense, they may proceed to consider a lesser included offense upon which evidence has been presented. The jury is not required to determine unanimously that the defendant is not guilty of the crime charged before they may consider a lesser included offense." *Id.* at paragraph three of the syllabus.

Our reversal of the court of appeals on this point of law does not presage a reversal of appellee's conviction. The instructions given by the trial court below were rather ambiguous as to the circumstances under which the jury was to consider the lesser included offense of murder. The court instructed the jury:

"If you find that The State has proven beyond a reasonable doubt all of the essential elements of the crime of aggravated murder, then your verdict must be that the Defendant is guilty of aggravated murder; and you will not consider the lesser offense.

"However, if you find that The State has failed to prove beyond a reasonable doubt the element of prior calculation and design, then your verdict must be that the Defendant is not guilty of aggravated murder.

"You will then proceed with your deliberations and decide whether The State has proven beyond a reasonable doubt all of the essential elements of the lesser crime of murder."

This instruction does not expressly require unanimous acquittal on the charged crime, but rather addresses possible disagreement by the jury on the element of prior calculation and design and a corresponding inability to reach a verdict of guilty of aggravated murder. The arguments of the parties as to the prejudicial effect, if any, of such instruction are somewhat less than clear. In our opinion, this instruction has negligible coercive potential because it speaks to the jury's inability to find, whether unanimously or not, a certain element of the greater offense. We are not persuaded that the trial court's instruction unduly prejudiced the appellee, and thus we affirm his conviction of aggravated murder. We stress, however, that a better instruction would be to incorporate the "in-

ability to agree" language adopted by this court today.

Accordingly, we reverse the judgment of the court of appeals and remand the cause to the trial court for reinstatement of the conviction of the appellee.

*Judgment reversed.*

MOYER, C.J., LOCHER, DOUGLAS and H. BROWN, JJ., concur.

SWEENEY and WRIGHT, JJ., concur in the syllabus but dissent from the judgment.

SWEENEY, J., dissenting. The majority is correct in essentially reiterating the standard that "* * * [i]nvoluntary manslaughter is always and necessarily a lesser included offense of murder because murder cannot ever be committed without also committing or attempting to commit a felony or a misdemeanor." *State* v. *Kidder* (1987), 32 Ohio St. 3d 279, 282, 513 N.E. 2d 311, 315. Nevertheless, the majority in Part I of its opinion usurps the function of the trier of fact by holding defendant's version of the killing (one that clearly compels an involuntary manslaughter instruction) to be unreasonable as a matter of law. With all due respect to the members of the majority, it is not and should never be the function of this court to weigh the credibility of a defendant's story or alibi in this context. However, the majority's finding that defendant's story of the events leading up to the killing was unreasonable places this court in the position of a trier of fact.

While I personally may have serious reservations or doubts concerning the defendant's version of the circumstances surrounding the shooting, it is not my province or this court's province to cure the failure of the trial court to give a lesser included offense instruction by holding, *sua sponte,* that the defendant's version was unreasonable. As this court noted in *State* v. *Wilkins* (1980), 64 Ohio St. 2d 382, 388, 18 O.O. 3d 528, 532, 415 N.E. 2d 303, 308:

"The persuasiveness of the evidence regarding the lesser included offense is irrelevant. If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given. The evidence must be considered in the light most favorable to defendant."

As the court of appeals below stated:

"From the evidence put forth at trial, particularly Thomas' admission to his in-laws, the jury, if permitted, could have found that Thomas had not purposely caused the victim's death, but did cause his death as a proximate result of committing a crime. This would be involuntary manslaughter, not aggravated murder or murder."

Based on the foregoing, I would affirm the well-reasoned judgment of the court of appeals below.

WRIGHT, J., concurring in part and dissenting in part. I concur in the syllabus law announced by the majority, but like Justice Sweeney I believe it is not for this court to substitute its judgment for that of the trier of fact. Defendant's version of the crime is improbable, but I must agree with the court of appeals that Thomas has the constitutional right to submit the issue of his credibility coupled with his version of the offense to a jury of his peers. Thus, I must respectfully dissent from the result in this case.

SWEENEY, J., concurs in the foregoing opinion.