OPINION
{¶ 1} Defendant-appellant Sean Dempsey appeals from his conviction and sentence for Gross Sexual Imposition. Dempsey contends that the trial court abused its discretion by refusing his request for an instruction on the lesser-included offense of Sexual Imposition, that his trial counsel was ineffective for having failed to interpose hearsay objections to testimony concerning out-of-court statements made by the alleged victim, and that the trial court imposed a more-than-minimum sentence without making the findings required by R.C. 2919.14(B).
 {¶ 2} We conclude, based upon the evidence in the record, that the trial court did not abuse its discretion by refusing the instruction on the lesser-included offense of Sexual Imposition. Dempsey's evidence, if credited, would have persuaded a reasonable jury that the sexual activity that occurred between him and his alleged victim was consensual, thereby entitling him to a verdict of acquittal. There was no evidence in the record from which a reasonable jury could have concluded that Dempsey was guilty of the lesser-included offense of Sexual Imposition, but not guilty of Gross Sexual Imposition, the charged offense.
 {¶ 3} The record fails to support Dempsey's claim that his trial counsel was ineffective for having failed to interpose hearsay objections to the testimony of three witnesses concerning out-of-court statements made by the alleged victim. It appears from the record that these statements would likely have qualified under the "excited utterance" exception to the hearsay rule — Evid.R. 803(2) — had trial counsel interposed objections to these statements. Finally, we conclude that the trial court, in imposing sentence, made a statement on the record concerning the seriousness of the offense, and the likelihood of Dempsey's recidivism, satisfying the finding required to impose a more-than-minimum sentence upon a first-time offender, required by R.C.2919.14(B). Accordingly, the judgment of the trial court is affirmed.
 I {¶ 4} Dempsey and his alleged victim, J.C., met as fellow students in a firefighter level one class at the Clark County Joint Vocational School. Dempsey testified that during this course, he and J.C. became "friends with benefits," apparently a phrase meaning that although they were not romantically involved, they would from time to time engage in sexual activity with one another. J.C., while admitting that there may have been some sexual banter between them, denied that there had ever been any kind of sexual activity between her and Dempsey.
 {¶ 5} J.C. and Dempsey attended the first class of a firefighter level two course on January 13, 2003. This class finished at about 9:25 in the evening. As J.C. put her books and other gear in the back seat of her car, Dempsey got in the passenger side of her car, and told her that he wanted to talk. J.C. told Dempsey that she needed to leave very soon, but said that she would talk to him for five minutes.
 {¶ 6} According to J.C., Dempsey began to kiss her, and she told him to stop. Dempsey then leaned on J.C. with his body and reclined her seat. J.C. again told Dempsey to stop. After J.C.'s seat was in a reclined position, Dempsey used his body weight to pin her into the driver's seat, and put his hand inside her shirt, Dempsey then pulled up her bra, touched her breast with his hand, and put his mouth on her breast. Then Dempsey moved his hand down her pants.
 {¶ 7} Although J.C. testified at trial that Dempsey touched her vagina with his hand and digitally penetrated her, she made other statements concerning this aspect of their encounter that appeared to conflict with this account. From her other statements, a reasonable jury could have concluded that as soon as Dempsey started to move his hand down her pants, she pulled his hand away, and he desisted.
 {¶ 8} Dempsey noticed that students were leaving the building following another class. He got up, got out of J.C.'s car, and left.
 {¶ 9} Dempsey's account of this encounter differed from J.C.'s account. To begin with, he testified that he and J.C. had performed sexual acts together before this evening. He testified that when he began kissing her neck, she did not resist, but kissed him back on his neck. He testified that when he reclined her seat, put his arm around her stomach, lifted her bra, and began touching and kissing her breasts, she did not resist him in any way, but that he stopped when he saw people coming from the building, because the school had a rule against public displays of affection.
 {¶ 10} Dempsey testified that although J.C.'s version of events was not truthful, he could not ascribe any motive to her, or otherwise account, for her untruthful testimony.
 {¶ 11} J.C. contacted fellow firefighter Chris Clark within twenty minutes of the incident. Clark was also a detective with the Clark County Sheriff's Department. Clark met J.C. a few minutes later at the fire house, where J.C. told Clark about the incident. Clark encouraged J.C. to file a report both with the Clark County Sheriff's Department and with the Joint Vocational School.
 {¶ 12} After talking with Clark, J.C. called another fellow firefighter, Dustin Hensley. Hensley was a dispatcher with the Clark County Sheriff's Department. J.C. talked to Hensley at about midnight that night, while he was on duty. Hensley and Clark both testified that J.C. sounded very upset. Hensley dispatched Sheriff's Deputy Chad Stalder to J.C.'s residence. Stalder took a report concerning the incident. Stalder testified that J.C. appeared to be upset when he met with her at her residence.
 {¶ 13} Two days after the incident, Detective Shelley Meyer, of the Clark County Sheriff's department, interviewed J.C. As a result of this interview, it was decided to record a telephone conversation between J.C. and Dempsey. The next day, January 16, 2003, two telephone conversations between Dempsey and J.C. were recorded. A redacted version of these recordings was received in evidence at the trial. During that recorded conversation, Dempsey acknowledged that he had got carried away, did not deny that he had touched J.C.'s breast, admitted that what he did was wrong, but denied that he had moved his hands down her pants.
 {¶ 14} Dempsey was arrested and charged with Rape and Gross Sexual Imposition. Dempsey requested a jury instruction on the lesser-included offense of Sexual Imposition, but this was refused.
 {¶ 15} Following a jury trial, Dempsey was convicted of Gross Sexual Imposition, but acquitted of Rape.
 {¶ 16} Later, at a sentencing hearing, Dempsey was sentenced to fifteen months incarceration, more than the minimum sentence of six months, and fined $2,500. Dempsey was also classified as a sexually oriented offender, the minimum classification for this offense.
 {¶ 17} From his conviction and sentence, Dempsey appeals.
 II {¶ 18} Dempsey's First Assignment of Error is as follows:
 {¶ 19} "The trial court erred and abused its discretion in refusing the appellant's request for an instruction of sexual imposition as a lesser included offense of gross sexual imposition."
 {¶ 20} The State concedes that Sexual Imposition is a lesser-included offense of Gross Sexual Imposition. Gross Sexual Imposition, a felony of the fourth degree, requires purposely compelling another to submit to sexual contact by threat or force. Sexual Imposition, a third-degree misdemeanor, involves sexual contact while knowing, or recklessly failing to know, that the contact is offensive to the victim. The sexual activity to which both Dempsey and J.C. testified — Dempsey's touching her breasts with his hand and with his mouth — constitutes sexual contact. Furthermore, Dempsey appears to be conceding that his having reclined J.C. in her seat and leaning over her, thereby pinning her in her seat, constituted force. The issue, according to Dempsey, is whether he had the requisite intent for either offense. Dempsey maintained, and argued to the jury, that the sexual contact between him and J.C. was consensual, so that he was entitled to an outright acquittal.
 {¶ 21} Both parties recognize that a trial court has some discretion to determine whether a jury should be instructed concerning a lesser-included offense. The issue is whether the evidence at trial would reasonably support a conviction for the lesser-included offense, but an acquittal of the greater, charged offense. State v. Thomas (1988),40 Ohio St.3d 213, 218. Dempsey contends that a reasonable jury could have found, from the evidence in this record, that although he did not intend to compel J.C. to submit to his advances by force or threat of force, he recklessly failed to know that his contact was offensive to J.C. He predicates this view of the evidence upon his testimony that, although J.C. did tell him "no," and asked him to stop, he had reason to believe, based upon prior sexual activity they had engaged in, that she meant by this: "No, you'll get me started and you'll have to finish. We don't have time to finish." Theoretically, a jury might have credited Dempsey's testimony concerning previous sexual acts he and J.C. had engaged in, including the meaning ascribed to J.C.'s use of the word "no" during those previous encounters. Theoretically, the jury could have chosen not to credit Dempsey's testimony concerning J.C.'s willing participation in the sexual activity on the night in question, while simultaneously choosing to discredit J.C.'s testimony that she pushed Dempsey, and even scratched his face slightly on one occasion. There was some physical corroboration of the testimony concerning the scratching, but Dempsey testified that this was the result of a shaving nick.
 {¶ 22} Nevertheless, in our view, the trial court did not abuse its discretion in concluding that no reasonable jury would have split the difference this way. It appears likely that a jury would either have credited J.C.'s testimony that there had been no previous history of sexual activity between her and Dempsey, in which event there would have been no reasonable basis for Dempsey's claim that he was merely reckless in believing that he had J.C.'s consent, or the jury, by crediting Dempsey's testimony, would have concluded that the sexual contact was, in fact, consensual, entitling Dempsey to an outright acquittal. Because we conclude that the trial court did not abuse its discretion in refusing to give the requested instruction on the lesser-included offense of Sexual Imposition, Dempsey's First Assignment of Error is overruled.
 III {¶ 23} Dempsey's Second Assignment of Error is as follows:
 {¶ 24} "The ineffectiveness of appellant's counsel denied him his right to counsel and a fair trial as guaranteed by thesixth amendment to the united states constitution."
 {¶ 25} Dempsey contends that his trial counsel was ineffective for having failed to object to testimony given by Christopher Clark, Dustin Hensley and Chad Stalder concerning out-of-court statements J.C. made to them regarding the incident. Each of these witnesses testified that J.C. was upset and crying when she made these statements. All of these statements were given within three hours of the alleged sexual assault.
 {¶ 26} As the State notes, Evid.R. 803(2) provides for an exception to the hearsay rule for: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." We agree with the State that it appears likely, from this record, that hearsay objections to these out-of-court statements, had they been interposed, would have been overruled on the basis of the excited utterance exception to the hearsay rule. Therefore, we cannot say that trial counsel's failure to have objected to these statements overcomes the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" set forth in Strickland v. Washington (1984), 466 U.S. 668. Nor does it appear that "there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." Id.
 {¶ 27} Parenthetically, we note that Dempsey does not claim that his trial counsel was ineffective for having failed to object to the testimony of Detective Shelley Meyer concerning J.C.'s out-of-court statements to her. These statements were made two days after the alleged assault, and Meyer testified that J.C. did not appear to be upset or excited at that time. We note that Meyer's testimony concerning J.C.'s statement to her includes very little detail concerning the alleged touching of J.C.'s breasts, and was cumulative with the out-of-court statements concerning which Clark, Hensley and Stalder testified, all of which would probably have qualified under the excited utterance exception to the hearsay rule. The exception to the cumulative nature of Meyer's testimony would be J.C.'s alleged statement to her concerning the digital penetration of her vagina. Because Dempsey was acquitted of the charge of Rape, to which that testimony related, it appears that Dempsey was not prejudiced by his trial counsel's failure to have objected to Meyer's testimony concerning J.C.'s out-of-court statement to her.
 {¶ 28} Dempsey's Second Assignment of Error is overruled.
 IV {¶ 29} Dempsey's Third Assignment of Error is as follows:
 {¶ 30} "The trial court erred and abused its discretion in sentencing the appellant to fifteen months incarceration on a fourth-degree felony."
 {¶ 31} Dempsey concedes that the general rule requiring imposition of a community control sanction for first-time fourth- and fifth-degree felony offenders does not apply to him because he was convicted of a sex offense. He contends, however, and the State concedes, that R.C. 2929.14(B) requires the trial court to impose the shortest sentence — in this case six months — unless either or both of the following applies:
 {¶ 32} The offender was serving a prison term at the time of the offense, or the offender had previously served a prison term.
 {¶ 33} The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
 {¶ 34} The State concedes that Dempsey, who was 18 years old at the time of the offense, was not serving a prison term at the time of the offense, and had not previously served a prison term.
 {¶ 35} The issue is whether the trial court made the necessary finding that the shortest prison term would demean the seriousness of Dempsey's conduct, or would not adequately protect the public from future crime by the offender or by others. The trial court was required to make this finding at the sentencing hearing. State v. Comer (2003),99 Ohio St.3d 463-469.
 {¶ 36} At the sentencing hearing, the trial court made the following statement:
 {¶ 37} "I do believe that this Defendant is a danger in this and any other community that he resides in. I believe because of the nature and seriousness of this offense and recidivism being a likelihood in my mind because of the lack of remorse, this pattern of activity, that a minimum sentence would not justify or would not meet the criteria of the sentencing statute to protect the community and punish the offense. Just looking at the facts in this case and as the jury believed the victim, so does the Court."
 {¶ 38} In our view, the above-quoted statements satisfied the trial court's obligation, pursuant to R.C. 2919.14(B), to make a finding on the record that either the shortest prison term would demean the seriousness of Dempsey's conduct, or that the shortest prison term would not adequately protect the public from future crime of the offender. Furthermore, we conclude that there is evidence in the record to support the trial court's finding in this regard.
 {¶ 39} Dempsey's Third Assignment of Error is overruled.
 V {¶ 40} All of Dempsey's assignments of error having been overruled, the judgment of the trial court is Affirmed.
Wolff and Young, JJ., concur.